**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LARRY KLAYMAN

        Plaintiff,

v.

JUDICIAL WATCH, INC.,

        Defendant.

**COMPLAINT**

**I.       INTRODUCTION**

Plaintiff Larry Klayman ("Plaintiff") is the founder and former chairman and general counsel of Defendant Judicial Watch, Inc. ("Defendant Judicial Watch"). During Plaintiff's time at Defendant Judicial Watch, Plaintiff successfully represented Jose Basulto, ("Basulto") leader of the nonprofit Cuban exile organization Brothers to the Rescue, in suing the Republic of Cuba, Fidel Castro, Raul Castro Ruiz, and the Cuban Air Force, and obtaining a judgment (the "Cuba Judgment") for damages totaling $1,750,000.00. *See Basulto v. Castro*, 1:02-cv-21500, (S.D. Fla.).

On September 19, 2003, Plaintiff left Defendant Judicial Watch in order to run for the U.S. Senate in the State of Florida. As part of Plaintiff's departure, Plaintiff and Defendant Judicial Watch executed a severance agreement (the "Severance Agreement) which contained a non-disparagement clause. The language of the non-disparagement clause mandated that:

> Judicial Watch express agrees that its present directors and officers namely Paul Orfanedes and Thomas Fitton, will not, directly or indirectly, disseminate or publish, or cause or encourage anyone else to disseminate or publish, in any matter, disparaging, defamatory or negative remarks or comments about [Plaintiff].

A copy of the Severance Agreement, containing the non-disparagement clause, is attached hereto as **Exhibit A**. Since the execution of the Severance Agreement, Defendant Judicial Watch has engaged in a pattern and practice of disregarding the letter and the spirit of non-disparagement clause. This is evidenced by a judgment entered in favor of Plaintiff against Defendant Judicial Watch in the U.S. District Court for the Southern District of Florida in 2014 resulting from Defendant Judicial Watch maliciously defaming Plaintiff in an unrelated matter. *See Klayman v. Judicial Watch*, 13-cv-20610 (S.D. Fla.). The defamation was so egregious that punitive damages were awarded by the jury. The judgment is final and was so compelling that it was never appealed, but Defendant has for years refused to pay Plaintiff. As a result, Plaintiff is seeking by writ of execution in this district and a concomitant enforcement proceeding to have it finally paid to him.

Since Plaintiff left Defendant Judicial Watch, Defendant Judicial Watch has made no effort to enforce the Cuba Judgment on behalf of Basulto. As a result, Plaintiff and Basulto agreed that Basulto would use Plaintiff's services to enforce the Cuba Judgment. Indeed, as Plaintiff advised Basulto, upon the election of Donald Trump as president there finally was a great possibility for the United States Government to demand that Cuba pay outstanding judgments as a condition for improving relations further. (Plaintiff also advised Basulto that other appropriate legal means could be employed to enforce the Cuba Judgment, even if the new Trump administration could not negotiate payment by Cuba). Plaintiff knows and has previously worked with several persons and and around President Elect Trump and in any event has a considerable legal background and expertise as not just a litigator, and a former federal prosecutor, but as an international litigator and lawyer in general. Plaintiff has been a lawyer for nearly 40 years. Upon the death of Fidel Castro, Plaintiff disseminated widely and published a

press release which spoke to collecting the Cuba Judgment, which Defendant Judicial Watch undoubtedly read. **Exhibit B**. However, on or about November 30, 2016, Basulto called Plaintiff and informed Plaintiff that he was going to instead have Defendant Judicial Watch enforce the Cuba Judgment. During the phone call, Basulto informed Plaintiff that, on or about November 30, 2016, Defendant had maliciously defamed Plaintiff, using the wires and/or mails, in violation of the non-disparagement clause, by stating that Plaintiff did not, as a lawyer, have the resources or means to seek to enforce the Cuba Judgment and that this was why he now authorized Defendant Judicial Watch to enforce the Cuba Judgment.

## II.     JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 (Diversity of Citizenship Jurisdiction). The amount in controversy is in excess of $75,000 and parties are citizens of different states.

2. Venue is proper pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b)(2), (3) in that Defendant resides here and is subject to personal jurisdiction in this District. The Severance Agreement also provides for venue and jurisdiction in this district.

## III.     PARTIES

### Plaintiff

3. Larry Klayman is and individual, natural person and the founder and former chairman of Judicial Watch, Inc. He is a citizen of the state of Florida.

### Defendant

4. Defendant Judicial Watch, Inc. is a corporation who, at all material times was and is incorporated in the District of Columbia.

## IV.     STANDING

5. Plaintiff has standing to bring this action because he has been directly affected and victimized by the unlawful conduct complained herein. His injuries are proximately related to the conduct of Defendant Judicial Watch

## V. FACTS

6. Plaintiff is the founder and former chairman of Defendant Judicial Watch

7. While Plaintiff was at Defendant Judicial Watch, Plaintiff represented the leader of the nonprofit Cuban exile organization Brothers to the Rescue, Basulto, in a lawsuit against the Republic of Cuba, Fidel Castro, Raul Castro Ruiz, and the Cuban Air Force.

8. Plaintiff, based on his work and legal expertise, was able to obtain a judgment in favor of Basulto in the sum of $1,750,000.00.

9. On September 19, 2003, Plaintiff left Defendant Judicial Watch in order to run for U.S. Senate in the State of Florida. In conjunction with Plaintiff's departure, Plaintiff and Defendant Judicial Watch executed the Severance Agreement, which contained a non-disparagement clause stating "Judicial Watch express agrees that its present directors and officers namely Paul Orfanedes and Thomas Fitton (and Christopher Farrell as he was a director at this time and remains so along with Fitton and Orfanedes), will not, directly or indirectly, disseminate or publish, or cause or encourage anyone else to disseminate or publish, in any matter, disparaging, defamatory or negative remarks or comments about [Plaintiff]. **Exhibit A**.

10. Defendant Judicial Watch has engaged in a pattern and practice of disregarding the non-disparagement clause and defaming Plaintiff. For instance, Plaintiff won a separate defamation judgment for $181,000 against Defendant Judicial Watch when a federal jury found that Defendant Judicial Watch had maliciously defamed Plaintiff in violation of the Severance Agreement. *See Klayman v. Judicial Watch*, 13-cv-20610 (S.D. Fla.). Because of the will willful

egregious maliciousness of the defamation, the jury awarded punitive damages against Defendant Judicial Watch.

11. Since Plaintiff left Defendant Judicial Watch, Defendant Judicial Watch has made no efforts to enforce the Cuba Judgment on behalf of Basulto.

12. Throughout the years, Plaintiff and Basulto had discussed Plaintiff's representation of Basulto in order to enforce the Cuba Judgment. On or about November 25, 2016 Plaintiff and Basulto reaffirmed and entered into an agreement retaining Plaintiff's legal services to enforce the Cuba Judgment.

13. Indeed, as Plaintif realized and advised Basulto, upon the election of Donald Trump, there finally was a great possibilty for the United States Government to demand that Cuba pay outstanding judgments as a condition for improving relations, as well as take other appropriate legal measures to enforce the Cuba Judgment. Upon the death of Fidel Castro, Plaintiff published a press release saying as much, which Defendant Judicial Watch undoubtedly read. **Exhibit B**.

14. However, on or about November 30, 2016, Basulto called Plaintiff and informed Plaintiff that he was going to instead have Defendant Judicial Watch enforce the Cuba Judgment. During the phone call, Basulto provided Plaintiff with information showing that, on or about November 30, 2016, Defendant had maliciously defamed Plaintiff, using the wires and mails, in violation of the non-disparagement clause, by stating that Plaintiff did not have the resources or means to legally seek to enforce the Cuba Judgment and that the defamatory statement was why he now authorized Defendant Judicial Watch to enforce the Cuba Judgment.

15. On information and belief, Chris Farrell, who has been member of Defendant Judicial Watch's Board of Directors since before September 19, 2003, when Plaintiff left

Defendant JudicialWatch to run for U.S. Senate in Florida, was one of the persons who slanderously told Basulto that Plaintiff did not have the resources or means to legally seek to enforce the Cuba Judgment, in addition to Thomas Fitton and Paul Orfanedes, all of whom were acting in concert on behalf of Defendant Judicial Watch. This defamatory and disparaging remark was thus made and published by Thomas Fitton, president of Defendant Judicial Watch, and Paul Orfanedes, the head of Defendant Judicial Watch's litigation department, as well as Director Christopher Farrell, all of whom were willfully and maliciously acting in concert on behalf of Defendant Judicial Watch.

16.  In fact, Plaintiff frequently engages in this type of complex litigation and has the legal and other expertise, necessary time, manpower, and financial—amount other—resources to enforce the Cuba Judgment and Defendant Judicial Watch had prior knowledge of this.  To the contrary, Judicial Watch, which is run by Thomas Fitton, who is not a lawyer, lacks generally the expertise to enforce the Cuba Judgment. No other employee at Judicial Watch has expertise in international litigation or international law, much less judgment collection. To the contrary, while a trial lawyer for the U.S. Department of Justice, and thereafter in private practice, Plaintiff engaged in considerable judgment collection. He therefore has considerable expertise in this area of the law.

## FIRST CAUSE OF ACTION

### Breach of Contract

17.  Plaintiff re-alleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

18. The Severance Agreement, and the non-disparagement provision contained therein, executed between Plaintiff and Defendant Judicial Watch, was, at all material times, and is, a validly executed contract with full force and effect.

19. On or about November 30 2016, Basulto called Plaintiff and informed Plaintiff that he was going to instead have Defendant Judicial Watch enforce the Cuba Judgment. During the phone call, Defendant provided information to Plaintiff showing that Defendant had maliciously defamed Plaintiff, using the wires and mails, in violation of the non-disparagement clause, by stating that Plaintiff did not have the resources or means to legally enforce the Cuba Judgment and that this was why he now authorized Defendant Judicial Watch to enforce the Cuba Judgment.

20. On information and belief, Christopher Farrell, who has been member of Defendant Judicial Watch's Board of Directors since before September 19, 2003, when Plaintiff left Defendant Judicial; Watch to run for U.S. Senate in Florida, was one of the persons who willfully and maliciously slanderously told Basulto that Plaintiff did not have the resources or means to legally enforce the Cuba Judgment, in addition to Thomas Fitton and Paul Orfanedes, all of whom were acting in concert on behalf of Judicial Watch. Thus, this defamatory and disparaging published statement was made made by Thomas Fitton, president of Defendant Judicial Watch, and Paul Orfanedes, the head of Defendant Judicial Watch's litigation department, as well as director Christopher Farrell, all of whom were working in concert on behalf of Judicial Watch.

21. This false statement, which was published to Basulto, willfully and maliciously and/or with reckless disregard for the truth, disparaged, defamed, and cast Plaintiff in a negative light, in violation of the Severance Agreement.

WHEREFORE, Plaintiff respectfully request that this Court enter judgment against Defendant Judicial Watch for actual and compensatory damages in a sum to be determined by a jury, for costs herein incurred, for attorneys' fees, and for such equitable relief and other further relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION

### Defamation

22.     Plaintiff re-alleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

23.     Defendant Judicial Watch made and published false and defamatory statements concerning Plaintiff by saying to Basulto that Plaintiff lacked the resources and means to legally enforce the Cuba Judgment

24.     Defendant Judicial Watch, in fact, knew that the statement concerning Plaintiff was false as Defendant Judicial Watch knew of Plaintiff's legal expertise and undoubtedly closely monitors Plaintiff's activities, as to this day the directors of Judicial Watch and Judicial Watch itself continue to feel competitive with Plaintiff, who is the founder of the organization and a lawyer. The person who is the president of Judicial Watch, Thomas Fitton, had not graduated from college at the time that Plaintiff left the organization despite telling Plaintiff that he was a college graduate when Plaintiff hired him years earlier. In addition, while leading the public to believe that he is a lawyer and thus trying to pass himself off as a lawyer, Fitton is not a lawyer and thus particularly since Plaintiff left Judicial Watch has felt and behaved in a very defensive and hostile manner toward, and feels competitive with, Plaintiff, as Fitton obviously does not have Plaintiff's legal expertise or experience.

25. Defendant Judicial Watch's statement was published to Basulto, who understood it to be of or concerning Plaintiff.

26. Defendant Judicial Watch's statement was not subject to any privilege

27. As a direct and proximate result of Defendant Judicial Watch's statement, which was published willfully and maliciously, or at a minimum with reckless disregard for the truth, Plaintiff has suffered actual, compensatory and pecuniary damages, as well as injury to reputation, impairment to standing in the community, personal humiliation, pain and suffering, and emotional distress.

WHEREFORE, Plaintiff respectfully request that this Court enter judgment against Defendant Judicial Watch in a sum to be determined by a jury, actual, compensatory, general and punitive damages, for costs herein incurred, for attorneys' fees, and for such other and further relief as this Court deems just and proper.

### THIRD CAUSE OF ACTION

**Tortious Interference with Prospective Business Relations**

28. Plaintiff re-alleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

29. Plaintiff had an existing business relationship with Basulto by virtue of Basulto's agreement to retain Plaintiff to enforce the Cuba Judgment.

30. Defendant Judicial Watch intentionally interfered with Plaintiff's business relationship with Basulto by disparaging Plaintiff and slanderously telling Basulto that Plaintiff lacked the necessary resources and means to legally enforce the Cuba Judgment.

31. On information and belief, Defendant Judicial Watch was fully aware of Plaintiff's existing business relationship with Basulto, and willfully and maliciously intervened

with Basulto in order to misleadingly convince, based on false information, to have Basulto break his agreement retaining Plaintiff and instead to retain Defendant Judicial Watch to enforce the Cuba Judgment.

32. As a result of Defendant Judicial Watch's tortious and intentional interference, Basulto informed Plaintiff on or about November 30, 2016 that he had instead retained Defendant Judicial Watch to enforce the Cuba Judgment.

33. As a direct and proximate result of Defendant Judicial Watch's defamatory and false statement, Plaintiff has suffered actual, compensatory, pecuniary and punitive damages.

WHEREFORE, Plaintiff respectfully request that this Court enter judgment against Defendant Judicial Watch in a sum to be determined by a jury, for actual, compensatory, general, and punitive damages, for costs herein incurred, for attorneys' fees, and for such other and further relief as this Court deems just and proper.

**VI.   PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment against Defendant as follows:

(a) For general (non-economic), special (economic), actual and compensatory damages in excess of $600,000.00 and punitive damages in excess of $1,550,000.00, as Judicial Watch's current net worth is estimated to be in excess of $35,000,000.00.

(b) For equitable relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

**Plaintiffs demand a trial by jury on all counts as to all issues so triable.**

Dated: January 7, 2017                           Respectfully submitted,

                                                 */s/ Larry Klayman*
                                                 Larry Klayman, Esq.

        D.C. Bar No. 334581
        2020 Pennsylvania Ave. NW, Suite 800
        Washington, DC 20006
        Tel: (310) 595-0800
        Email: leklayman@gmail.com

*Pro Se*