**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LARRY KLAYMAN,

    *Plaintiff*,

v.

JUDICIAL WATCH, INC.,

    *Defendant*.

Civil Action No. 17-34 (TJK)

## MEMORANDUM OPINION AND ORDER

This Opinion concerns the latest in a long line of disputes between Plaintiff Larry Klayman and Defendant Judicial Watch, Inc. Klayman accuses Judicial Watch's President, Thomas Fitton, of having perjured himself in a declaration submitted to the Court. Based on this purported misconduct, Klayman has moved for entry of judgment in his favor. ECF No. 29 ("Mot."). As explained below, Klayman's motion will be denied.

### I. Background

This Opinion assumes familiarity with Klayman's allegations as summarized in a prior opinion by Judge Kollar-Kotelly, to whom this case was previously assigned. *Klayman v. Judicial Watch, Inc.*, 267 F. Supp. 3d 81 (D.D.C. 2017). In a nutshell, this case concerns the legal representation of Jose Basulto in his attempt to enforce a judgment against the Cuban government. *See id.* at 83. For a brief time, Klayman allegedly represented Basulto in that matter. *Id.* Klayman alleges that, on or about November 30, 2016, Judicial Watch told Basulto that Klayman lacked the resources to carry out the representation, inducing Basulto to drop Klayman as his attorney and hire Judicial Watch. *Id.* This, Klayman claims, constituted a breach of his severance agreement with Judicial Watch, defamation, and tortious interference with prospective economic advantage. *Id.* at 85-86.

The parties' current dispute arose from a discovery motion that Klayman filed on January 9, 2018. ECF No. 26. The motion sought to compel the depositions of several Judicial Watch officers, including Fitton. *Id.* Judicial Watch cross-moved for a protective order seeking, among other things, to quash Fitton's deposition. ECF No. 27. It argued that Fitton did not have any relevant information about this case, and expressed concern, in light of the years-long history of contentious litigation between the two parties, that Klayman would misuse the deposition as an opportunity to harass Fitton. ECF No. 27-1 at 4-6. In support of its cross-motion, Judicial Watch submitted a declaration by Fitton. ECF No. 27-2 Ex. B ("Fitton Decl."). In his declaration, Fitton stated:

> 5. I have had no communication (written, oral or otherwise) with Basulto in several years, except that Judicial Watch did send him a Christmas card each year that I signed. I have no knowledge regarding Klayman's alleged representation of Basulto nor was I ever aware, prior to the lawsuit, that Klayman alleged he represented Basulto regarding the Cuba Judgment. At no time did I direct or authorize anyone to communicate with Basulto regarding Klayman's alleged representation of Basulto, nor am I aware of any such communications. In summary, I do not possess any knowledge or information relevant to this dispute.
>
> 6. If compelled to appear at a deposition, I will not be able to answer any questions regarding this lawsuit as I do not have any information.

Fitton Decl. ¶¶ 5-6.

In order to resolve the parties' discovery dispute, the Court held a telephone conference on the record on January 16, 2018. As a result of the conference, the Court authorized Klayman to depose Fitton for one hour. *See* Minute Order of January 16, 2018.

On March 1, 2018, Klayman filed the instant motion seeking entry of judgment in his favor. Mot. Klayman claims that Fitton perjured himself in his declaration and that entry of judgment is an appropriate sanction. *Id.* at 1-2. The factual basis for this claim is the deposition

2

testimony of another Judicial Watch officer, Paul Orfanedes, who testified that, in December 2016, Fitton signed a representation agreement between Judicial Watch and Basulto. *Id.* at 4-5 (citing Orfanedes deposition transcript). Klayman argues that Fitton therefore lied, because the representation agreement constituted a "communication" with Basulto, and because it demonstrated that Fitton must have had relevant information about the litigation. *Id.* at 5. This conduct, Klayman claims, amounted to a fraud on the court and perjury, suborned by Judicial Watch and its counsel. *Id.* at 5-7.

Klayman raised these perjury allegations during Fitton's deposition. *See, e.g.*, ECF No. 31 Ex. A ("Fitton Dep.") at 33:6-15. Fitton testified that, at the time he signed the declaration, he no longer recalled the 2016 representation agreement. *Id.* at 19:22-20:5, 21:9-12. Indeed, while not disputing that he had signed the agreement, Fitton testified at his deposition that he had no personal recollection of having signed it, even after Klayman had attempted to refresh Fitton's recollection as to the existence of the agreement. *Id.* at 21:19-22, 22:9-18. Fitton further testified that the declaration was accurate because (1) the representation agreement was not a "communication" between himself and Basulto, (2) he had not himself sent the agreement to Basulto, and (3) he had no knowledge of Judicial Watch's communications with Basulto that allegedly induced Basulto to fire Klayman. *Id.* at 26:15-19, 30:15-18.

Based in large part on Fitton's testimony, Judicial Watch argues that Klayman's claims of perjury are groundless. In Judicial Watch's view, Fitton's declaration is true—or at the very least, true to the best of Fitton's knowledge at the time he signed it. ECF No. 31 at 3. Moreover, even if the declaration contained misstatements, Judicial Watch argues, they would not have been material. *Id.* at 5-6.

On April 2, 2018, Klayman filed a "Supplement" to his motion. ECF No. 38 ("Pl.'s Supp.").[1] In the supplement, Klayman argues that Judicial Watch has improperly invoked the attorney-client privilege and work-product doctrine during the course of discovery, and that this purported discovery abuse further warrants entry of judgment in his favor. *Id.* He rests this argument upon Judicial Watch's invocation of privilege during the January 2018 depositions of Fitton, Orfanedes, and another Judicial Watch employee. *See* ECF No. 38-1 (exhibits to supplement).

## II. Legal Standard

"[C]ourts have an inherent power at common law to 'protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments.'" *Parsi v. Daioleslam*, 778 F.3d 116, 130 (D.C. Cir. 2015) (citation omitted) (quoting *Shepherd v. ABC*, 62 F.3d 1469, 1472 (D.C. Cir. 1995)). Courts may impose "issue-related" sanctions—"such as barring admission of evidence or considering an issue established for the purpose of the action"—based on a preponderance of the evidence. *Id.* at 131. More severe, "penal" sanctions—including dismissal of the case or entry of a default judgment—require the Court to "find bad faith by clear and convincing evidence." *Id.*; *see Shepherd*, 62 F.3d at 1476-78. "The clear and convincing standard 'generally requires the trier of fact, in viewing each party's pile of evidence, to reach a firm conviction of the truth on the evidence about which he or she is certain.'" *Parsi*, 778 F.3d at 131 (quoting *United States v. Montague*, 40 F.3d 1251, 1255 (D.C. Cir. 1994)).

---

[1] The Court notes that this "Supplement" is incorrectly described on the docket sheet as a "supplemental motion." In fact, the document does not purport to be a separate motion, but rather to provide additional arguments in support of Klayman's instant motion for an entry of judgment.

4

On its own, a clear and convincing showing of bad faith, fraud, or other litigation misconduct is not sufficient to warrant dismissal or entry of default judgment. *Shepherd*, 62 F.3d at 1478. "Because disposition of cases on the merits is generally favored, . . . a default judgment must be a 'sanction of last resort,' to be used only when less onerous methods (for example, adverse evidentiary determinations or other 'issue-related sanctions') will be ineffective or obviously futile." *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir 1998) (quoting *Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1075 (D.C. Cir. 1986)). Therefore, the court "also must provide a specific, reasoned explanation for rejecting lesser sanctions, such as fines, attorneys' fees, or adverse evidentiary rulings." *Shepherd*, 62 F.3d at 1478.

The D.C. Circuit has identified "three basic justifications that support the use of dismissal or default judgment as a sanction for misconduct." *Id.* at 971. The first is whether "the errant party's behavior has severely hampered the other party's ability to present his case." *Id.* The second is "the prejudice caused to the judicial system where the party's misconduct has put 'an intolerable burden on a district court by requiring the court to modify its own docket and operations in order to accommodate the delay.'" *Id.* (quoting *Shea*, 795 F.2d at 1075). The third is "the need 'to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future.'" *Id.* (quoting *Shea*, 795 F.2d at 1077). Only "flagrant or egregious misconduct by the defendant" can support using a sanction as severe as default judgment as a deterrent measure. *Webb*, 146 F.3d at 975 (quoting *Bonds v. District of Columbia*, 93 F.3d 801, 809 (D.C. Cir. 1996)). The D.C. Circuit has also suggested that entry of a default judgment would not be appropriate where the alleged misconduct "did not go to the heart of plaintiffs' case." *Shepherd*, 62 F.3d at 1480.

Because such sanctions are grounded in the inherent power of the federal courts, they are governed by federal law even when the district court sits in diversity. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 51-55 (1991).

### III.  Analysis

Klayman argues that the Court should, pursuant to its inherent powers, impose the extraordinary sanction of a default judgment in his favor. Mot. at 2-3. But Klayman has not provided clear and convincing evidence of perjury or other egregious misconduct that would warrant such a sanction. Indeed, the Court cannot find on the record before it that Judicial Watch has committed any misconduct at all.

The Court agrees with Judicial Watch that Klayman has not shown that Fitton's declaration was false. Fitton declared that he had not communicated with Basulto and did not have any information relevant to this action. The only contradictory evidence Klayman has introduced is testimony stating that Fitton, in his capacity as President, signed Judicial Watch's December 2016 representation agreement with Basulto. But signing a contract does not necessarily involve a "communication," which means the "interchange of messages or ideas by speech, writing, gestures, or conduct." *Communication*, Black's Law Dictionary (10th ed. 2014). Fitton testified under oath that he did not himself send Basulto the agreement or otherwise communicate with Basulto about it. Fitton Dep. at 26:15-19. That is a plausible explanation for the content of Fitton's declaration, and Klayman has done nothing to rebut it.

Nor can the Court find that Fitton's declaration misled the Court in any material way. The ultimate point of Fitton's declaration was to establish that he lacked testimony relevant to this action. The transcript of Fitton's deposition bears that out. While the December 2016 representation agreement perhaps has some relevance to Klayman's claims, Fitton testified that he had no independent recollection of the agreement. *Id.* at 24:21-25:1. Nor did Klayman's

6

questioning appear to elicit any other facts relevant to the claims in this lawsuit. Indeed, most of Fitton's deposition was spent on tangential matters, such as who founded Judicial Watch, *id.* at 10:5-13:22, a judgment entered against Judicial Watch in a prior case that Klayman successfully litigated, *id.* at 49:19-58:4, whether Klayman's severance agreement obligates Judicial Watch to pay for his children's health insurance, *id.* at 58:21-59:20, and Klayman's efforts to get Fitton to testify that he had perjured himself, *id.* at 17:19-45:4.

In any event, even if Klayman had established by clear and convincing evidence that Fitton had perjured himself in his declaration, that showing alone would be insufficient to warrant the relief Klayman seeks. In order to enter a default judgment, the Court would have to find that no lesser sanction would adequately address the conduct at issue, in consideration of the three basic justifications that the D.C. Circuit has identified for such severe sanctions. *Webb*, 146 F.3d at 971-72; *Shepherd*, 62 F.3d at 1478. Klayman has not addressed this issue in his briefing, instead asserting (incorrectly and without acknowledging controlling cases holding otherwise) that the Court need not consider lesser sanctions. Mot. at 3-4. Given Klayman's failure to address this critical issue, the Court would not be in a position to enter a default judgment in his favor even if he had made a sufficient evidentiary showing of perjury.

The Court will not consider Klayman's argument, first raised in his "Supplement," that Judicial Watch should be sanctioned for improperly asserting the attorney-client privilege and work-product doctrine. Pl.'s Supp. at 2-5. "The Local Rules of this Court contemplate that there ordinarily will be at most three memoranda associated with any given motion: (i) the movant's opening memorandum; (ii) the non-movant's opposition; and (iii) the movant's reply." *Kim v. United States*, 840 F. Supp. 2d 180, 191 (D.D.C. 2012) (citing Local Civil Rule 7), *aff'd*, 707 F.3d 335 (D.C. Cir. 2013). Klayman had already submitted a reply (ECF No. 34) before filing

his "Supplement," which he filed without leave of the Court. Even if the Supplement is considered part of Klayman's reply, "it is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief." *Benton v. Laborers' Joint Training Fund*, 121 F. Supp. 3d 41, 51 (D.D.C. 2015) (quoting *Lewis v. District of Columbia*, 791 F. Supp. 2d 136, 140 n.4 (D.D.C. 2011)). This case is no exception, and so the Court will not entertain this argument in connection with the instant motion. Indeed, the Court would be poorly positioned to evaluate the merits of this argument even if it intended to do so, because the parties' briefing discusses this issue at far too high a level of generality to determine whether Judicial Watch has properly invoked the attorney-client privilege and work-product doctrine, much less whether Judicial Watch's conduct is sanctionable. Moreover, Klayman raised this argument with the Court during a telephone conference on the record regarding other discovery matters on May 15, 2018, and the Court ordered the parties to meet and confer about it before requesting the Court's intervention.

In addition to civil sanctions pursuant to the Court's inherent powers, Klayman also suggests two other bases for sanctions, but neither has merit. First, Klayman suggests that the Court could award the sanctions he seeks under Federal Rule of Civil Procedure 37(b). Mot. at 2. But that is plainly incorrect. "'[A] production order is generally needed to trigger' sanctions" under Rule 37(b). *Parsi*, 778 F.3d at 128 (quoting *Shepherd*, 62 F.3d at 1474). The purported misconduct at issue—Fitton's supposedly fraudulent declaration—did not involve the violation of a production order, and so Rule 37(b) does not apply.

Finally, Klayman requests that the Court initiate a criminal contempt proceeding against Judicial Watch. Mot. at 1. But Klayman has not come close to convincing the Court that it is appropriate to do so. As explained above, Klayman has not satisfied the "clear-and-convincing"

standard for awarding civil penal sanctions, such as entry of a default judgment, which means he also cannot satisfy the higher, "beyond-a-reasonable-doubt" standard for criminal contempt. *See Alexander v. FBI*, 186 F.R.D. 128, 135 (D.D.C. 1998). Therefore, the Court declines to hold an evidentiary hearing on that issue.

**IV.     Conclusion and Order**

For all of the above reasons, Klayman's Motion for Entry of Judgment (ECF No. 29) is hereby **DENIED**.

**SO ORDERED.**

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: May 18, 2018